UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

CHERYL BLENK,

          Plaintiff,

      -against-

EQUINOX HOLDINGS, INC. f/k/a
EQUINOX FITNESS CLUB and JOEL GREENGRASS,

          Defendants.

------------------------------------------------------------------------X

**JUDGE CASTEL**

**'07 CIV 6825**

Case No.:

**COMPLAINT**

**Plaintiff Demands Trial
By Jury In This Action**

Plaintiff Cheryl Blenk ("Ms. Blenk" or "Plaintiff"), by her attorneys, Dealy & Silberstein, LLP, respectfully alleges the following:

## NATURE OF ACTION

1.    This is an action for damages arising from (1) perceived disability under the Americans with Disabilities Act of 1990, 42 U.S.C. Sections 1210 *et seq*; (2) perceived disability in violation of New York State Executive Law Section 296; and (3) perceived disability in violation of New York City Human Rights Law (New York City Administrative Code Section 8-107(a)). Within 90 days of the commencement of this action, the Equal Employment Opportunity Commission (EEOC) issued a right to sue letter, a copy of which is annexed hereto as Exhibit "A").

## JURISDICTION

2.    Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 pursuant to the claims brought under the New York State Executive Law Section 296 and the New York City Administrative Code Section 8-107(a).

1

## VENUE

3.  Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b).

## THE PARTIES

4.  Plaintiff is a married female who is thirty-eight (38) years of age.

5.  Plaintiff resides in Scarsdale, New York.

6.  Upon information and belief, Defendant Equinox Holdings, Inc. f/k/a Equinox Fitness Club ("Equinox") is a Delaware corporation, authorized to conduct business in the State of New York, with a principal place of business located at 895 Broadway, Third Floor, New York, New York 10003.

7.  Upon information and belief, Defendant Equinox is an "employer" as referred to in the Americans with Disabilities Act of 1990, the New York State Human Rights Law and the New York City Human Rights Law.

8.  Upon information and belief at all relevant times, Joel Greengrass ("Greengrass") was Equinox's Director of Human Resources at Defendant Equinox.

## THE FACTS

### Plaintiff's Performance at Defendant Equinox

9.  Plaintiff began working at Equinox in or around July 2000.

10. In or around January 2005, Plaintiff became the Manager of the Equinox Fitness Training Institute ("EFTI") earning a yearly salary of $75,000.00.

11. Plaintiff worked as Manager of EFTI until her abrupt termination on October 27, 2005.

12. At all relevant times, during Plaintiff's employment with Defendant Equinox, she was supervised by Greengrass.

2

13.   In or around December 2004, Plaintiff became pregnant with her third child.

14.   During the week of June 1-5, 2005, despite being almost eight (8) months pregnant, Plaintiff agreed to teach at Equinox's "California Master Instructor Conference" (the "Conference").

15.   During the Conference, Plaintiff taught Equinox fitness managers from San Francisco, West Hollywood, Santa Monica, and Chicago all three (3) tiers of the Equinox curriculum, which could only be taught by "Master Instructors," such as Plaintiff.

16.   At the Conference, these fitness managers were provided with manuals prepared by Plaintiff, as well as given a power point presentation of the manuals, also prepared by Plaintiff.

17.   Upon Plaintiff's return to New York, Plaintiff met with Greengrass, who informed Plaintiff that he had received positive feedback from the attendees and viewed the Conference as a success. As a result of Plaintiff's efforts, ten (10) new Master Instructors were certified.

**Plaintiff's Discriminatory Treatment By Defendants Equinox and Greengrass**

18.   As with Plaintiff's prior two (2) pregnancies, (which also occurred while Plaintiff was working with Equinox) Plaintiff had planned to work through her due date, which was projected to be in late July 2005. However, on or about July 10, 2005, Plaintiff was diagnosed with meningioma, which is a form of a benign brain tumor.

19.   Thereafter, Plaintiff immediately informed Greengrass of the diagnosis, and, believing that the procedure to remove the tumor was only ambulatory in nature, informed Greengrass that she did not anticipate missing any appreciable time from work.

3

20. On or about July 18, 2005, prior to Equinox's "People and Learning Meeting," Plaintiff met with Greengrass to discuss Plaintiff's maternity leave.

21. During this meeting, Plaintiff informed Mr. Greengrass that she did not intend on taking a long maternity leave as there were many evolving issues in Plaintiff's department, and did not want to leave her department without leadership at the time.

22. In response, Greengrass suggested to Plaintiff that she should take whatever time she needed to recover, and should therefore increase the responsibilities of Plaintiff's assistants Geralyn Coopersmith and Johanna Subotovsky.

23. At that meeting, Plaintiff informed Greengrass that she had already spoken with Ms. Coopersmith, who had voiced her concern over potentially not having access to Plaintiff during her leave, and Plaintiff had reiterated her availability to work from home.

24. In response to Plaintiff's comment, Greengrass stated "don't worry about it, we will work something out".

25. Thereafter, during the "People and Learning Meeting" on July 18, 2005, the EFTI Department received a rating of 3 out of 5, the highest rating given to any department during the meeting.

26. When giving this rating, Greengrass made specific note of the fact that since Plaintiff was the only full time employee of the EFTI Department; this rating was essentially directed toward Plaintiff.

27. During the "People and Learning Meeting", Greengrass further instructed those present not to launch any more initiatives for the remainder of the year and to focus solely on fine tuning the initiatives put in place.

28.   On July 24, 2005, Plaintiff delivered a baby boy by cesarean section. Plaintiff was discharged from the hospital four (4) days later, on July 28, 2005, and was told that she was not allowed to work for two (2) weeks.

29.   On August 10, 2005, Plaintiff participated in a conference call with the National Strength & Conditioning Association ("NSCA") and David Harris, Director of Personal Training. Following the call, Mr. Harris requested that Plaintiff fly to Colorado Springs to attend a weekend educational seminar hosted by NSCA.

30.   However, Plaintiff was still recovering from her recent C-section and was unable to attend the seminar.

31.   During the month of August 2005, Plaintiff was in constant contact with EFTI team members regarding all aspects of the department.

32.   During this period of time, Mr. Greengrass informed Plaintiff that Equinox needed to certify more master instructors.

33.   Even though Plaintiff was still recovering from her C-Section and preparing for her brain surgery, Plaintiff offered to hold a certification right away in New York, and to then send out master trainers to Equinox's outer markets to instruct the curriculum.

34.   In response, Plaintiff was told to hold off by Sean Quimby, Director of Learning, because Equinox wanted to conduct an analysis of the situation prior to taking this step.

35.   On August 18, 2005, a Fitness Managers meeting was held. Plaintiff consulted on this meeting, but was unable to attend.

36. On August 22, 2005, Plaintiff, had her meningioma removed via a craniotomy. Unfortunately, this procedure turned out to be more involved and invasive than had been originally anticipated.

37. In this regard, the initial CAT Scan had failed to show a second tumor lying underneath the first tumor, which was pressing onto Plaintiff's brain.

38. Following the procedure, Plaintiff spent three (3) days in the Intensive Care Unit, followed by an additional four (4) days in the hospital.

39. Obviously, during this time Plaintiff was incapable of functioning as the manager of EFTI.

40. Plaintiff was discharged from the hospital on August 28, 2005.

41. During the period of August 29, 2005 through September 7, 2005, immediately following Plaintiff's brain surgery, Plaintiff was restricted from her usual and customary activities, including, inter alia, prohibitions on exertion, lifting, bending over, and driving.

42. Plaintiff routinely suffered from headaches during this time, and was taking pain medication.

43. Notwithstanding the foregoing, during this period Plaintiff was in constant contact with both Ms. Coopersmith and Ms. Subotovsky, who assured Plaintiff that they had matters at EFTI under control.

44. Specifically, Ms. Coopersmith and Ms. Subotovsky told Plaintiff that they were directing things away from Plaintiff to allow Plaintiff time to recover from her major operation.

45. In response, Plaintiff insisted that they not shield her, and instead use Plaintiff as a resource.

6

46.    Additionally, Plaintiff e-mailed Mr. Quimby to offer her assistance in any way possible during Plaintiff's recovery, but was told by Mr. Quimby that Plaintiff should simply reach out to Ms. Coopersmith and Ms. Subotovsky to see what they needed, which Plaintiff was already doing.

47.    By September 18, 2005, Plaintiff had sufficiently recovered and was able to return to work.

48.    On September 20, 2005, Plaintiff two (2) days out of recovery, taught for EFTI.

49.    On September 21, 2005, Plaintiff attended a fitness managers meeting, which was run by Ms. Coopersmith and Ms. Subotovsky, with Plaintiff's assistance.

50.    The following day, September 22, 2005, Plaintiff again taught for EFTI.

51.    On October 4, 2005, Plaintiff received her final CAT Scan and was told that everything looked normal and that she did not have to return for a follow-up visit until December 2005.

52.    On October 6, 2005, Plaintiff attended a corporate meeting with Mr. Quimby and Mr. Harris to discuss various educational initiatives and assistance for the fitness managers.

53.    On October 18, 2005, Plaintiff taught for EFTI in New York City, and also attended a national fitness managers meeting, for which Ms. Coopersmith, rather than Plaintiff, was put in charge.

54.    During this meeting, Plaintiff submitted an expense report to Mr. Greengrass covering the period of July 24, 2005 through September 2005 for expenses totaling $620.00, which was subsequently angrily refuted by Greengrass.

7

55.  When Plaintiff attempted to contact Greengrass to discuss the expenses, Plaintiff was informed that the issue would be discussed during a strategic planning meeting scheduled for October 27, 2005.

56.  Of these $620.00 in expenses, only $444.00 was ultimately paid by Defendant Equinox, leaving $176.00 unpaid.

57.  Thereafter, Plaintiff taught for EFTI in New York City on October 20, 25, & 27, 2005.

58.  At 5:30 P.M. on October 27, 2005, Plaintiff attended the "strategic planning" meeting with Greengrass and Mr. Quimby.

59.  However, when Plaintiff arrived at this meeting, Plaintiff was warned by Greengrass that Plaintiff "wasn't going to like any part of this meeting".

60.  Plaintiff was then summarily terminated, allegedly due to performance related issues.

61.  That evening, Plaintiff received an e-mail from Mr. Greengrass confirming that Plaintiff's termination was allegedly "based upon performance."

62.  During a subsequent telephone conversation amongst Plaintiff and Greengrass, Greengrass claimed that Plaintiff's performance had been "lacking from the first quarter of 2005."

63.  However, Plaintiff was never given any indication of any problems with respect to her performance until after she had a major operation to remove the benign tumor from her head.

64.  Upon information and belief, the reasons provided by Greengrass for Plaintiff's termination are either disingenuous or demonstrably untrue.

65.  In this regard, Greengrass's e-mail notes claimed "San Mateo in particular has not promoted a single trainer since opening".

66.  However, and as aforementioned, Plaintiff had in June 2005 assisted in certifying ten (10) new Master Instructors at the Conference held in Santa Monica, any of whom could have been assigned by Equinox to its San Mateo location.

67.  Ironically it was Greengrass himself who had specifically praised Plaintiff's performance during the "People and Learning Meeting".

68.  Similarly, as to Greengrass's contention that Plaintiff's performance had been lacking from the "first quarter of 2005," in May 2005 after Plaintiff had among other things, chaired Equinox's first educational conference during the first quarter of 2005, Greengrass had presented Plaintiff (as well as Ms. Coopersmith and Ms. Subotovsky) with an engraved Ipod to thank them for their efforts.

69.  Plaintiff's Ipod was engraved with the slogan "EFTI angels - its not fitness its life".

70.  This slogan arose from the fact that Greengrass customarily referred to Plaintiff, Ms. Coopersmith and Ms. Subotovsky as his "angels", as in "Charlie's Angels", since Greengrass usually spoke to them by conference call rather than in person.

71.  Additionally, Greengrass insisted that Plaintiff travel to New York City so that he could give Plaintiff her gift personally, at which time he thanked Plaintiff for doing such a wonderful job as the EFTI manager, and informed Plaintiff that he was very pleased by what Plaintiff had accomplished in only six (6) months on the job.

72.   Greengrass further informed Plaintiff that Plaintiff had accomplished more during her less than six (6) months on the job than had been accomplished in the previous two (2) years by her predecessors.

73.   As illustrated above, Greengrass's contention that during Plaintiff's "extended absences" there was "little to no management going on" similarly has no basis in fact.

74.   In addition to the foregoing, while Section 7.8 of Equinox's employee manual states that all Equinox employees will receive an annual performance review from their manager, Plaintiff never received any such performance review during her more than five (5) years with the company, despite several requests by Plaintiff.

75.   Upon information, based upon the foregoing, the reasons provided by Equinox for Plaintiff's termination are entirely pretextual.

76.   Upon information and belief, Plaintiff was in fact terminated by Equinox because Equinox perceived Plaintiff to be suffering from a disability because of her meningioma, although Plaintiff was fully recovered from her meningioma and had been shown to be a qualified employee.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT EQUINOX (VIOLATION OF AMERICANS WITH DISABILITIES ACT OF 1990)

77.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 76 with the same force and effect as if set forth at length herein.

78.   Based on the foregoing, Defendant Equinox has discriminated against Plaintiff by terminating Plaintiff's employment based upon Plaintiff's perceived disability in violation of the Americans with Disabilities Act of 1990 and has damaged Plaintiff thereby.

10

79.   As a direct and proximate result of the unlawful employment practices of Defendant,
      Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free
      from discrimination, and great humiliation.

80.   As a further and proximate result of these unlawful employment practices, Plaintiff has
      suffered a loss of enjoyment of life, emotional distress, damage to her professional
      reputation, humiliation, embarrassment, anxiety, insomnia, concern for her financial well-
      being, loss of income and benefits, as well as attorneys' fees and costs.

81.   As a result of Defendant Equinox's violation of the Americans with Disabilities Act of
      1990, Plaintiff has been damaged in the sum of two million ($2,000,000.00) dollars.
      Plaintiff further demands the attorneys' fees incurred by Plaintiff in this action.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS EQUINOX AND GREENGRASS VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW (PERCEIVED DISABILITY)

82.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 81 with
      the same force and effect as if set forth at length herein.

83.   The discriminatory conduct of the Defendants, including Greengrass who aided and
      abetted such conduct, substantially interfered with the employment of the Plaintiff and
      created an intimidating, hostile, and offensive work environment in violation of New
      York Executive Law section 296.

84.   As a direct and proximate result of the Defendants' unlawful employment practices, the
      Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free
      from discrimination, and great humiliation.

11

85.    As a further and proximate result of these unlawful employment practices, the Plaintiff

has suffered extreme mental anguish, outrage, severe anxiety about her future, painful

embarrassment among her friends and co-workers, damage to her good reputation,

disruption of her personal life and loss of enjoyment of the ordinary pleasures of

everyday life.

86.    As a result of the Defendants' violation of New York Executive Law section 296,

Plaintiff has been damaged in the sum of two million ($2,000,000.00) dollars.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS EQUINOX AND GREENGRASS -VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW (PERCEIVED DISABILITY )

87.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 86 with

the same force and effect as if set forth at length herein.

88.    The discriminatory conduct of the Defendants, including Greengrass who aided and

abetted such conduct, substantially interfered with the employment of the Plaintiff and

created an intimidating, hostile, and offensive work environment in violation of the New

York City Administrative Code Section 8-107(a).

89.    As a direct and proximate result of the Defendants' unlawful employment practices, the

Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free

from discrimination, and great humiliation.

90.    As a further and proximate result of these unlawful employment practices, the Plaintiff

has suffered extreme mental anguish, outrage, severe anxiety about her future, painful

embarrassment among her friends and co-workers, damage to her good reputation,

disruption of her personal life and loss of enjoyment of the ordinary pleasures of everyday life.

91.    As a result of the Defendants' violation of the New York City Administrative Code Section 8-107(a), Plaintiff has been damaged in the sum of two million ($2,000,000.00) dollars.

**WHEREFORE,** Plaintiff prays this honorable Court for judgment:

a)    On the First Cause of Action, in favor of Plaintiff and against Defendant Equinox for compensatory damages in the amount of two million ($2,000,000.00) dollars and for attorneys' fees;

b)    On the Second Cause of Action, in favor of Plaintiff and against all Defendants for compensatory damages in the amount of two million ($2,000,000.00) dollars, and for attorneys' fees; and

c)    On the Third Cause of Action, in favor of Plaintiff and against Defendants for compensatory damages in the amount of two million ($2,000,000.00) dollars, and for attorneys' fees.

d)    For the costs, disbursements, and attorneys' fees of this action; and

e)    For such other and further relief as to the Court shall deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated: New York, New York
      July 30, 2007

                                  Yours, etc.

                                  DEALY & SILBERSTEIN, LLP

                                  By: _____
                                      Stephanie Sheehan (9671)
                                    *Attorneys for Plaintiff Cheryl Blenk*
                                    225 Broadway, Suite 1405
                                    New York, New York 10007
                                    (212) 385-0066

14